**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **PATENT GROUP, LLC** | ) | |
| **Plaintiff,** | ) | **CASE NO. 6:10-cv-234** |
| **v.** | ) | |
| **G.T. WATER PRODUCTS, INC.,** | ) | |
| **Defendant.** | ) | |

**DEFENDANT GT WATER PRODUCTS' MOTION TO DISMISS PATENT GROUP'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1) AND SUPPORTING MEMORANDUM**

# TABLE OF CONTENTS


Page

TABLE OF AUTHORITIES ..... ii

I. INTRODUCTION ..... 1

II. STATEMENT OF RELEVANT FACTS ..... 3

III. ARGUMENT AND CITATION TO AUTHORITY ..... 4

A. Standard of Review ..... 4

B. Article III of the United States Constitution Requires that a Plaintiff, Including a *Qui Tam* Plaintiff, Demonstrate an Injury in Fact ..... 6

1. To Establish Article III Standing, a Plaintiff Must Allege an Injury in Fact, Causation, and Redressability ..... 6

2. Article III Standing and the *Qui Tam* Plaintiff ..... 7

3. Article III Standing in Relation to the False Marking Statute ..... 8

C. Patent Group's Conclusory and Conjectural Allegation of Injury is Not Sufficient to Establish Article III Standing ..... 10

IV. CONCLUSION ..... 13

CERTIFICATE OF SERVICE ..... 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Chatham Condominium Assocs. v. Century Village, Inc.*,
597 F.2d 1002 (5th Cir. 1979) .....5

*Craig v. Ontario Corp.*,
543 F.3d 872 (7th Cir. 2008) .....4

*ESN, LLC v. Cisco Sys., Inc.*,
2009 U.S. Dist. LEXIS 125628 at *24-26 (E.D. Tex., Dec. 30, 2009).....5

*Evers v. Astrue*,
536 F.3d 651 (7th Cir. 2008) .....4

*FEC v. Atkins*,
524 U.S. 11 (1998).....6, 11

*Forest Group, Inc. v. Bon Tool Co.*,
590 F.3d 1295 (Fed. Cir. 2009).....1-3

*Glaser v. Wound Care Consultants, Inc.*,
570 F.3d 907 (7th Cir. 2009) .....5

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992).....6-9, 11

*Mayfield v. Texas*,
206 F. Supp. 2d 820 (E.D. Tex. 2001).....7

*McCready v. White*,
417 F.3d 700 (7th Cir. 2005) .....4

*McDaniel v. United States*,
899 F. Supp. 305 (E.D. Tex. 1995).....4

*Menchaca v. Chrysler Credit Corp.*,
613 F.2d 507 (5th Cir. 1980) .....4

*Meridian Sec. Ins. Co. v. Sadowski*,
441 F.3d 536 (7th Cir. 2006) .....4

*Mugworld, Inc. v. A.A. Marck & Assocs., Inc.*,
563 F. Supp. 2d 659 (E.D. Tex. 2000).....5

*Pederson v. Louisiana St. Univ.*,
213 F.3d 858 (5th Cir. 2000) .....5

*Pequignot v. Solo Cup Co.*,
540 F. Supp.2d 649, 652 (E.D. Va. 2008) .....9, 10

*Ramming v. United States*,
281 F.3d 158 (5th Cir. 2001) .....4

*Rodriguez v. Tex. Comm'n on the Arts*,
992 F. Supp. 876 (N.D. Tex. 1998) .....6

*Stauffer v. Brooks Bros.*,
615 F. Supp. 2d 248 (S.D.N.Y. 2009) .....2, 8-12

*Steel Co. v. Citizens for a Better Environment*,
523 U.S. 83, 118 S. Ct. 1003 (1998) .....6, 11

*Summers v. Earth Islant Inst.*,
--U.S.--, 129 S. Ct. 1142 (2009) .....7, 9

*Vermont Agency of Natural Res. v. U.S. ex rel. Stevens*,
529 U.S. 765 (2000) .....6-8

*Warth v. Seldin*,
422 U.S. 490 (1975) .....5

*Whitmore v. Arkansas*,
495 U.S. 149 (1990) .....6, 11

**STATUTES**

28 U.S.C. § 1404(a) .....1

35 U.S.C. § 292 .....1, 2, 9, 10

**RULES**

Rule 9(b) of the Federal Rules of Civil Procedure .....1, 5

Rule 12(b)(1) of the Federal Rules of Civil Procedure .....1, 5, 7

Rule 12(b)(6) of the Federal Rules of Civil Procedure .....1, 5

COMES NOW Defendant GT Water Products, Inc. ("GT Water Products") and hereby moves, pursuant to Rules 12(b)(1) of the Federal Rules of Civil Procedure, to dismiss the First Amended Complaint filed by Plaintiff Patent Group, LLC ("Patent Group") on the grounds that subject matter jurisdiction over this case is lacking because Patent Group does not have standing to bring this case in that its First Amended Complaint does not present a justiciable case or controversy under Article III of the United States Constitution.[1]

## I. INTRODUCTION

Plaintiff Patent Group's First Amended Complaint is brought as a *qui tam* action under the patent false marking statute, 35 U.S.C. § 292. This statute, which was enacted in 1870, carries a maximum $500 penalty for each "offense." Until recently, very few cases have been brought under the statute, likely because of the minimal penalty. The statute, however, was recently reviewed and interpreted by the Federal Circuit in its decision of *Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295 (Fed. Cir. 2009). In *Forest Group*, the Federal Circuit held that "the plain language of 35 U.S.C. § 292 requires courts to impose penalties for false marking on a per article basis."[2]

---

[1] GT Water Products has previously filed four motions: (1) a Motion to Dismiss under Rule 12(b)(1) for lack of standing under Article III of the Constitution because Patent Group cannot demonstrate the existence of a concrete and particularized injury sufficient to confer standing; (2) a Motion to Dismiss under Rule 12(b)(6) and Rule 9(b) for failure to state a claim; (3) a Motion to Stay pending the Federal Circuit's decision on the same standing issue raised in GT Water Products' 12(b)(1) motion, in a similar false marking case that the district court dismissed for lack of standing; and (4) a Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), because the balance of the conveniences weighs heavily in favor of transferring this case to the Central District of California. Counsel for Patent Group has filed this First Amended Complaint because the original Complaint was insufficient to withstand the arguments raised in the Motions to Dismiss filed by GT Water Products. The First Amended Complaint fares no better. In the interest of judicial economy, GT Water Products respectfully requests that the Court consider the Motion to Transfer first, such that the same district court that otherwise will be dealing with the merits of the case (*i.e.*, the transferee court, if the Court grants the Motion to Transfer, or this Court, if the Court denies the motion) can address the remaining substantive motions.

[2] The court in *Forest Group*, however, made clear that "[t]his does not mean that a court must fine those guilty of false marking $500 per article marked. The statute provides a fine of 'not more than $500 for every such

As a result of the *Forest Group* decision, a new cottage industry has recently sprung up wherein a private citizen with no connection to the industry or product at issue (unlike in *Forest Group* where a competitor filed a false marking claim) files suit against a manufacturer alleging a violation of § 292 simply because the manufacturer has not removed a patent number from a product covered by the patent upon expiration of the patent. These new suits, however, still must comply with the jurisdictional requirements imposed by Article III of the United States Constitution.

All federal court actions, including *qui tam* actions under § 292, are subject to Article III's requirements of the existence of a justiciable case or controversy. All plaintiffs, including *qui tam* plaintiffs under § 292, must establish Article III standing by demonstrating the existence of an actual injury in fact that is concrete and particularized. With respect to § 292, it has been held that a plaintiff must allege a "concrete and particularized" injury in order to have standing under Article III to bring such a case. *Stauffer v. Brooks Bros., Inc.,* 615 F. Supp. 2d 248, 254 (S.D.N.Y. May 14, 2009) (appeal pending). In the absence of such a concrete and particularized injury, the court lacks subject matter jurisdiction under Article III.

These plaintiffs filing these false marking *qui tam* actions typically do not claim to have been harmed by the alleged false marking. Instead, they simply seek a monetary windfall under a theory that each product marked with an expired patent number could carry a fine of up to $500. Patent Group does not allege that it is a competitor of GT Water Products, and it does not allege any relation to or connection with the industry in which GT Water Products sells its products. Patent Group's present allegations of actual injury because it paid alleged inflated prices for products made and sold by GT Water Products are non-sensical and unsupportable conjecture

offense'.... In the case of inexpensive mass-produced articles, a court has the discretion to determine that a fraction of a penny per article is a proper penalty."

and speculation. The only real basis Patent Group alleges for filing suit against GT Water Products is that some patent numbers referenced on the products or packaging of a product made and sold by GT Water Products are for patents that have expired.

Patent Group has not alleged that it has suffered any concrete and particularized injury as a result of this alleged mismarking. Nor has Patent Group alleged, as a *qui tam* plaintiff, any concrete and particularized assignable injury suffered by the United States. Rather, Patent Group has filed suit only in the hope of collecting a bounty from GT Water Products in light of the recent *Forest Group* decision. Because Patent Group has failed to allege the existence of an actual injury in fact that is concrete and particularized, under Article III and the clear guidance of the United States Supreme Court, this action must be dismissed for lack of subject matter jurisdiction.

## II. STATEMENT OF RELEVANT FACTS

Patent Group alleges that Defendant GT Water Products falsely marked its products or packaging with certain expired patents.

Patent Group's only allegations of injury are as follows:

> ... Relator has suffered harm, both individually and as a member of the public. As a member of the public, Relator has suffered the deleterious economic effects caused by Defendant's conduct which deceives the public and inhibits competition in the marketplace. As an individual, Relator suffered direct economic harm when it purchased Defendant's falsely marked products at artificially inflated prices. In other words, Defendant's conduct caused Relator to pay more than it should have for Defendant's products. (First Amended Complaint, ¶ 4.)
>
> . . .
>
> For at least the reasons set forth, Defendant has wrongfully and illegally advertised patent rights which it does not possess, and, as a result, has likely caused the retail price of its products described herein to be inflated above normal market levels, and has caused Plaintiff, a consumer of Defendant's products, to pay this inflated price. (First Amended Complaint, ¶¶ 27, 43.)

> The public deception, and/or competitive harm caused by each of Defendant's false marking has and continues to harm the United States, including Relator, a representative of the public incurring the cost and time associated with this enforcement. (First Amended Complaint, ¶¶ 28, 45.)

As discussed below at pages 11-12, Patent Group's allegation that GT Water Products' conduct inhibited competition and caused Patent Group to pay inflated prices are conclusory and conjectural. Patent Group fails to show any traceable connection between the alleged injury and the alleged false marking. Because Patent Group has not alleged and cannot demonstrate an injury in fact, it has no standing to sue and its First Amended Complaint must be dismissed.

## III. ARGUMENT AND CITATION TO AUTHORITY

### A. Standard of Review

"Federal courts are courts of limited jurisdiction and may only exercise jurisdiction where it is specifically authorized by federal statute." *Evers v. Astrue,* 536 F.3d 651, 657 (7th Cir. 2008) (citation and quotation marks omitted). As such, "[e]nsuring the existence of subject-matter jurisdiction is the court's first duty in every lawsuit." *McCready v. White,* 417 F.3d 700, 702 (7th Cir. 2005). As the Seventh Circuit explains, "[s]ubject-matter jurisdiction is so central to the district court's power to issue any orders whatsoever that it may be inquired into at any time, with or without a motion, by any party or by the court itself." *Craig v. Ontario Corp.,* 543 F.3d 872, 875 (7th Cir. 2008). Furthermore, the proponent of federal jurisdiction bears the burden of establishing subject matter jurisdiction. *See Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001) (citing *McDaniel v. United States,* 899 F. Supp. 305, 307 (E.D. Tex. 1995) ("Because the burden of proof on a motion to dismiss for lack of subject matter jurisdiction is on the party asserting jurisdiction, plaintiff "constantly bears the burden of proof that jurisdiction does in fact exist."); *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980); *Meridian Sec. Ins. Co. v. Sadowski,* 441 F.3d 536, 540 (7th Cir. 2006) ("[The] party that chooses federal court

[must] set out the basis of federal jurisdiction and prove any contested factual allegation."); *see also Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 913 (7th Cir. 2009) ("The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction.").

Standing is a necessary element of federal court jurisdiction under Article III of the Constitution. *Warth v. Seldin,* 422 U.S. 490, 498 (1975). Standing is the threshold question in every federal case. *Id.* at 499. If the plaintiff does not have standing, there are no other issues to decide. *Pederson v. Louisiana St. Univ.,* 213 F.3d 858, 869 (5th Cir. 2000); *Mugworld, Inc. v. A.A. Marck & Assocs., Inc.,* 563 F. Supp. 2d 659, 664 (E.D. Tex. 2000). GT Water Products has filed, concurrently with this motion, a motion to dismiss Patent Group's First Amended Complaint under Rule 12(b)(6) and Rule 9(b) because Patent Group has failed to plead facts sufficient to state a claim. However, because standing is jurisdictional, this Court should consider this motion regarding Patent Group's lack of standing before considering the 12(b)(6) motion.

Attacks on subject matter jurisdiction under Rule 12(b)(1) come in two forms. "Facial attacks" on the complaint "require the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Chatham Condominium Assocs. v. Century Village, Inc.,* 597 F.2d 1002, 1011 (5th Cir. 1979) (citations omitted); *see also ESN, LLC v. Cisco Sys., Inc.,* 2009 U.S. Dist. LEXIS 125628 at *24-26 (E.D. Tex. Dec. 30, 2009). Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered. Here, GT Water Products challenges subject matter jurisdiction based on the allegations in the First Amended Complaint. Thus, GT Water Products presents a "facial" challenge to Patent

Group's claims. As indicated above, Patent Group, as the party averring jurisdiction, bears the burden of proof that this Court has subject matter jurisdiction over his claims. *Rodriguez v. Tex. Comm'n on the Arts,* 992 F. Supp. 876, 879 (N.D. Tex. 1998).

**B. Article III of the United States Constitution Requires that a Plaintiff, Including a *Qui Tam* Plaintiff, Demonstrate an Injury in Fact**

**1. To Establish Article III Standing, a Plaintiff Must Allege an Injury in Fact, Causation, and Redressability**

Article III of the United States Constitution limits federal court jurisdiction to deciding "cases" and "controversies." *See* U.S. Constitution, Art. III, § 2. To satisfy this "case or controversy" requirement, all plaintiffs, including *qui tam* plaintiffs, must satisfy "the 'irreducible constitutional minimum' of standing, which is an 'essential and unchanging part' of Article III's case or controversy requirement, and a key factor in dividing the power of government between the courts and the two political branches." *Vermont Agency of Natural Res. v. U.S. ex rel. Stevens,* 529 U.S. 765, 771 (2000) (internal citations omitted).[3]

The United States Supreme Court has identified three elements essential to Article III standing. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). "First and foremost, there must be alleged (and ultimately proved) an 'injury in fact' – a harm suffered by plaintiff that is '*concrete and particularized'* and *actual or imminent,* not 'conjectural' or 'hypothetical.'" *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 103 (1998) (emphasis supplied).[4] "Second, there must be causation – a fairly traceable connection between the plaintiff's injury and the complained of conduct of the defendant." *Id.* "And third, there must be redressability –

[3] *Vermont Agency* involved an actual monetary injury under the False Claims Act.

[4] *See also Lujan v. Defenders of Wildlife, Inc.,* 504 U.S. 555, 560 (1992); *Whitmore v. Arkansas,* 495 U.S. 149, 155 (1990) (stating the injury in fact must be "concrete and particularized"); *FEC v. Atkins,* 524 U.S. 11, 24 (1998) (the alleged harm suffered must be "actual" and "concrete," an "abstract harm" such as "injury to the interest in seeing that the law is obeyed...deprives the case of the concrete specificity" required for Article III standing).

likelihood that the requested relief will address the alleged injury." *Id.* "This triad of injury in fact, causation and redressability constitutes the core of Article III's case or controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Id.* at 102-04.

"With no allegation of injury, the 'hard floor' of Article III standing is absent and there is no subject matter jurisdiction." *Summers v. Earth Island Inst.,* --U.S.--, 129 S.Ct. 1142, 1152 (2009). "Standing is not an ingenious academic exercise in the conceivable, but as we have said requires ... perceptible harm." *Lujan,* 504 U.S. at 566 (internal citations and quotations omitted). If a plaintiff lacks standing, the court lacks subject matter jurisdiction and must dismiss the plaintiff's claims under Rule 12(b)(1). *See Mayfield v. Texas,* 206 F. Supp. 2d 820, 822-23 (E.D. Tex. 2001).

### 2. Article III Standing and the *Qui Tam* Plaintiff

Unlike a traditional plaintiff, a *qui tam* plaintiff commonly suffers no injury to himself. Even in *qui tam* cases, however, standing is not automatic. The United States Supreme Court addressed relator standing in *Vermont Agency of Natural Resources v. United States ex rel. Stevens,* 529 U.S. 765 (2000). In that case, a private individual brought a *qui tam* suit under the False Claims Act in federal court. *Id.* at 768. The Court held that although *qui tam* plaintiffs are "partial assignee[s] of the United States" they still must allege concrete and particularized injuries. *Id.* at 771, 774 n. 4 (emphasis in original). In that case, the *qui tam* relator alleged that his former employer submitted false records to the Environmental Protection Agency in an effort to receive unearned grant money. *Id.* at 770. The allegation of a specific actual fraud against the United States resulting in monetary loss was held sufficient to meet the requirements of Article III standing. *Id.* at 774.

The *Vermont Agency* Court identified two separate injuries the United States had sustained. First, the United States had an obvious and actual economic injury: the EPA's alleged monetary overpayment. *Id.* at 771. This potential monetary loss is the portion of the United States' injury that was assigned to the *qui tam* plaintiff in *Vermont Agency.* Of course, the United States also has a general interest in the faithful obedience of its laws. When this general interest is offended – as it was alleged to have been in *Vermont Agency* – the United States itself can show a separate concrete injury that confers Article III standing on it. *Vermont Agency,* 529 U.S. at 771.

With respect to the false marking statute, it has been held that an alleged violation of the United States' interest in its laws being obeyed cannot alone form the basis for a *qui tam* relator to establish standing. *Stauffer v. Brooks Bros., Inc.,* 615 F. Supp. 2d 248, 254-55 (S.D.N.Y., May 14, 2009) (appeal pending). This is because such a general, abstract injury is not concrete and particularized enough to establish Article III standing. *Id.* As the United States Supreme Court stated in *Lujon:*

> We have consistently held that a plaintiff ... claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large, does not state an Article III case or controversy.

*Lujan,* 504 U.S. at 573-74.

**3. Article III Standing in Relation to the False Marking Statute**

In relation to the false marking statute, in particular, a *qui tam* relator must identify the specific injury alleged to have been caused by the false marking, because while in "most *qui tam* actions, the alleged injury to the United States as assignor is obvious and proprietary.... In the context of a section 292 claim ... the injury to the United States as assignor is far less evident." *Stauffer,* 615 F. Supp. 2d at 254. "By its terms, the statute seeks to protect the public not simply

from false marking of unpatented articles but instead from false marking that is fraudulent, deceptive, and intentional." *Id.* "Accordingly, the actionable injury in fact that the government is able to assign would have to be an injury to it or the public stemming from the fraudulent or deceptive false marking." *Id.*

In *Stauffer,* the court dismissed the *qui tam* relator's complaint under 35 U.S.C. § 292, where the relator only pled vague and conclusory allegations of harm just like Patent Group's allegations of harm in this action. The *Stauffer* plaintiff alleged that Brooks Brothers falsely marked its bow ties with patents that had expired in order to deceive the public. Specifically, he alleged that the defendants' conduct "ha[d] wrongfully *quelled competition* with respect to [the marked products] thereby causing harm to the economy of the United States[]" and that the defendants had "wrongfully and illegally advertis[ed] patent monopolies that they do not possess" and "ha[d] benefited in at least maintaining their considerable market share...." *Stauffer,* 615 F. Supp. 2d 248, 254 (S.D.N.Y. 2009) (emphasis supplied). With respect to Stauffer's allegation of injury, virtually identical to Patent Group's allegation of injury here, the court held:

> In particular, the complaint fails to allege with any specificity an actual injury to any individual competitor, to the market for bow ties, or to any aspect of the United States economy. That some competitor might somehow be injured at some point, or that some component of the United States economy might suffer some harm through defendants' conduct, is purely speculative and plainly insufficient to support standing. *Cf. Summers,* --U.S. at --, 129 S.Ct. at 1151-52 (finding "some day" harms "without any description of concrete plans, or indeed any specification of when the some day will be – do not support a finding of the 'actual or imminent' injury that our cases require" (citations omitted)); *Lujan,* 504 U.S. at 566, 112 S.Ct. 2130 ("Standing is not 'an ingenious academic exercise in the conceivable' ... [but] requires ... perceptible harm." (citations omitted)).

*Stauffer,* 615 F. Supp. 2d at 254.

As part of its analysis, the court considered a recent decision by another district court, *Pequignot v. Solo Cup Co.,* 640 F. Supp. 2d 714 (E.D. Va. 2009), on standing in the context of a

§ 292 false marking claim and rejected its approach. In that case, a practicing patent attorney, Pequignot, sued Solo Cup, a manufacturer of disposable cups and lids, for false patent marking and sought to recover $500 per plastic lid. The court held that Pequignot had standing to sue as a *qui tam* plaintiff as an assignee of the government's "sovereign" interest in seeing its laws enforced. *Id.* at 723, n. 15. The court reached this decision even though it found no proprietary injury to the United States, and that "the injury to the United States is only to its sovereignty." *Id.* at 728.[5] The court in *Stauffer* rejected this analysis. First, it explained that even assuming that a violation of the United States' sovereign interest in law enforcement could be assignable and potentially vindicated by a *qui tam* action, there is no harm to this interest "absent an alleged injury in the form of deception to the public." *Stauffer,* 615 F. Supp. 2d at 254, n. 5. In addition, the court found it unlikely that "the Government's interest in seeing its laws enforced could alone be an assignable, concrete injury in fact sufficient to establish a *qui tam* plaintiff's standing." *Id.* As the court explained, [a]n 'abstract' harm such as 'injury to the interest in seeing that the law is obeyed ... deprives the case of the concrete specificity' necessary for standing." *Id.* (internal citations omitted).

**C. <u>Patent Group's Conclusory and Conjectural Allegation of Injury is Not Sufficient to Establish Article III Standing</u>**

To avoid a motion to dismiss, a plaintiff claiming false marking under 35 U.S.C. § 292 must sufficiently plead an actual or imminent injury to himself, the United States or the public as a result of false marking done with the intent to deceive the public. *Stauffer v. Brooks Bros., Inc.,* 615 F. Supp. 2d 248, 255 (S.D.N.Y. 2009). Patent Group has failed to allege any "concrete and

[5] The Federal Circuit on June 10, 2010 issued a decision in *Pequignot v. Solo Cup Co.,* following an appeal of the district court's decision. However, the Federal Circuit did not address the standing issue.

particularized" and "actual" or "imminent" injury to itself, the United States, or the public as a result of the alleged false marking.

Here the deficiencies of Patent Group's allegations of harm as a member of the public are virtually identical to those in the complaint that the court dismissed in *Stauffer*. On their face, Patent Group's allegations of injury are conjectural and hypothetical. *See Lujan v. Defenders of Wildlife, Inc.,* 504 U.S. 555, 560 (1992); *Whitmore v. Arkansas,* 495 U.S. 149, 155 (1990); *FEC v. Atkins,* 524 U.S. 11, 24 (1998).

Moreover, Patent Group's allegation of harm resulting from GT Water Products' purported "misusing its patent rights to extend the term of its patent and inhibiting competition," (First Amended Complaint ¶¶ 25, 42) is undoubtedly conclusory. While some courts have found that a defendant's direct competitors may be able to show the requisite "injury in fact" to state a false marking claim, Patent Group makes no allegation that it is a competitor of GT Water Products. Nor does Patent Group allege how the mismarking purportedly inhibited competition. Entirely absent from this vague and amorphous allegation of injury is any factual allegation whatsoever that would establish a causal connection between the alleged mismarking and the purported harm of inhibited competition. There are no facts in the First Amended Complaint that even suggest a nexus between the allegedly mismarked products and any injury by Patent Group, the United States, or the general public's buying habits and perceptions. As the Supreme Court stated in *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 118 S.Ct. 1003 (1998), there must exist "a fairly traceable connection between plaintiff's injury and the complained of conduct of the defendant." *Steel,* 523 U.S. at 103. None of Patent Group's allegations connect the alleged mismarking of the product at issue to the alleged harm of inhibited competition.

Patent Group's allegation of harm arising from purported inhibited competition is identical to the plaintiff's allegation of harm in *Stauffer* and is insufficient to confer Article III standing for the same exact reasons. In short, just as the plaintiff in *Stauffer,* "[Patent Group] has failed to allege that defendant's conduct has caused an actual or imminent injury in fact to competition, to the United States economy, or to the public that could be assigned to him as a *qui tam* plaintiff or be vindicated through th[is] litigation." 615 F. Supp. 2d at 255. "He therefore lacks standing to proceed." *Id.*

Recognizing that harm suffered by Patent Group is essential to establishing subject matter jurisdiction, Patent Group now attempts to allege in its First Amended Complaint that it suffered economic harm. Patent Group now claims that when it purchased products made by GT Water Products at inflated prices that GT Water Products' alleged false marking caused Patent Group to pay more than it should have for the products made by GT Water Products. (First Amended Complaint, ¶¶ 27, 44.)

These allegations fail to show any actual injury to Patent Group for several reasons. First, unless Patent Group was unaware that the patents listed on the packaging or products had expired, the alleged false marking by GT Water Products could not have caused Patent Group to pay more than it should have for products from GT Water Products. It is highly unlikely that Patent Group was unaware that the listed patents had expired when it purchased the products. There was no allegation of any such purchase in Patent Group's original Complaint where it alleged that the patents had expired. Despite its burden to prove jurisdiction, Patent Group in the First Amended Complaint fails to make any allegations regarding when or where it purchased the products made by GT Water Products.

Furthermore, it is pure conjecture and speculation that Patent Group or anyone else has paid an inflated retail price because of any alleged false marking by GT Water Products. GT Water Products does not establish the retail price for its products. The prices for the products from GT Water Products could only have been inflated if the retailer was unaware of the expiration of the patents or participated in a scheme to inflate the prices by intentionally deceiving the public by advertising expired patents and believing such advertising would allow it to charge inflated prices. Patent Group has made no such allegations in its First Amended Complaint.

## IV. CONCLUSION

As Patent Group's allegations of injury are, at best, merely conjecture and speculation, it appears to be filing this case only as a professional plaintiff seeking to collect a monetary windfall for alleged conduct that has not affected it in any manner, let alone caused it any real harm. Moreover, as a purported *qui tam* plaintiff, Patent Group has not established any concrete or particularized injury to the public caused by the alleged false marking. Further, Patent Group has failed to allege that the purported injury would be redressed by a decision in its favor. Accordingly, Patent Group lacks Article III standing and its First Amended Complaint must be dismissed for lack of subject matter jurisdiction. For all of the foregoing reasons, the Court should dismiss Patent Group's First Amended Complaint because it, personally and as a *qui tam* plaintiff, has not and cannot allege a cognizable injury in fact to support Article III standing.

Respectfully submitted this 29th day of July, 2010.

Respectfully submitted,

s/ Katie Anderson

**KATIE ANDERSON**
STATE BAR NO. 00789631
**LAUREN T. BECKER**
STATE BAR NO. 24046983
**STRASBURGER & PRICE, LLP**
901 MAIN STREET, SUITE 4400
DALLAS, TX 75202-3794
(214) 651-4300
(214) 651-4330 Fax

**THEODORE S. MACEIKO**
Admitted Pro Hac Vice
**JONES DAY**
555 S. Flower Street, 50th Floor
Los Angeles, CA 90071
(213) 489-3939
(213) 243-2539 Fax

**ROBERT C. WEISS**
**LAW OFFICES OF ROBERT C. WEISS**
Admitted Pro Hac Vice
3770 Highland Avenue, Suite 203
Manhattan Beach, CA 90266
(310) 545-9854
(310) 545-9853 Fax

**ATTORNEYS FOR DEFENDANT**
**G.T. WATER PRODUCTS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2010, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court.

s/ Katie Anderson
Katie Anderson